## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRET STEVENSON,**<br><br>　　　　Plaintiff,<br><br>v.<br><br>**SETHMAR TRANSPORTATION, LLC,**<br>Serve Registered Agent:<br>Business Filings Inc.<br>112 SW 7th St., Ste. 3C<br>Topeka, KS 66603<br><br>　　　　Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff Bret Stevenson, by and through the undersigned counsel, and for his Complaint against Defendant Sethmar Transportation, LLC, states and avers to the Court as follows:

## TYPE OF ACTION

1. This is an action for compensatory and punitive damages arising under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA").

## PARTIES

2. Plaintiff resides in Papillion, Sarpy County, Nebraska.

3. At all times mentioned herein, Defendant Sethmar Transportation, LLC ("Sethmar") was a Kansas limited liability company, registered to do business in the State of Kansas, employed at least twenty (20) employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and was an "employer" within the meaning of the ADA.

4. At all times mentioned herein, the individuals described in this Complaint were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment or were acting as a "proxy" or "alter-ego," and/or the actions were expressly authorized by Defendant and/or their actions were ratified by Defendant, thus making Defendant liable for said actions under the doctrine of respondeat superior.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction of these employment discrimination claims, and venue properly lies in this judicial district pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1391, and 42 U.S.C. § 2000e-5(f)(3).

6. Venue is also proper in this Court because some of the unlawful discriminatory acts perpetrated by Defendant against Plaintiff occurred in Johnson County, Kansas.

7. Plaintiff seeks damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. On January 19, 2024, Plaintiff timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the acts complained of herein alleging that Defendant subjected him to disability discrimination. A copy is attached hereto and incorporated herein as Exhibit A.

9. On February 13, 2024, Plaintiff received a Notice of Right to Sue from the EEOC. A copy is attached hereto and incorporated herein as Exhibit B.

10. Plaintiff filed this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

11. Plaintiff has properly exhausted all administrative remedies.

## **ALLEGATIONS COMMON TO ALL COUNTS**

12. Following Plaintiff's graduation from college in 2013, he established a career in the trucking industry over the course of the next decade of his life.

13. Plaintiff worked his way up at CH Robinson from Buyer to Capacity Account Manager.

14. After that, Plaintiff accepted the position of Director of Capacity at Clear Vision Logistics.

15. In or about May and/or June 2023, Mike and Andy Tuley, two of Plaintiff's former colleagues at CH Robinson, notified Plaintiff about a Capacity Account Manager job opening at Sethmar in Overland Park, KS.

16. Mike was the Vice President of Operations and Andy was the President at Sethmar at the time.

17. Plaintiff was told that the job would allow him to work remotely from his home in Papillion, NE most of the time, but he would travel to Kansas for work a few times per month.

18. In or about June 2023, Plaintiff's discussions with Sethmar regarding the job opening progressed and Sethmar indicated to Plaintiff that it was hiring him in a Capacity Account Manager position.

19. Plaintiff's starting pay in the position was $70,000 plus commissions, and his direct supervisor was Dan Rock, the Director of Carrier Sales.

20. In or about mid-to-late June and/or early July 2023, Plaintiff travelled to Kansas where he spent about three days getting situated in his new position at Sethmar and obtaining a laptop and other equipment so that he could work remotely from his home.

21. During this time, a Sethmar email address was set up for Plaintiff, as was other login information for his computer and software needed to perform his job duties.

22. In or about late June 2023, Plaintiff was diagnosed with alcohol use disorder ("AUD").

23. AUD is a physical and/or mental impairment which limits Plaintiff's ability to perform one or more daily life activities, including, but not limited to, his ability to socialize, work, and/or sleep.

24. In or about late June and/or early July 2023, Plaintiff informed Sethmar that he was struggling with AUD and that he was planning to seek medical treatment for his alcohol addiction at a rehabilitation facility in Omaha, NE called Northpoint from on or about July 3, 2023 through on or about July 30, 2023.

25. Sethmar initially acknowledged that Plaintiff would be on leave from work during that time period and indicated to him that it had no issue with his leave of absence he was going to take in order take care of himself and his family.

26. In or about late June and/or early July 2023, Sethmar terminated Dan's employment and hired Ryan Mize as Director of Carrier Sales.

27. Shortly before leaving for Northpoint on July 3, 2023, Sethmar instructed Plaintiff to ship his laptop back to them for "recalibration".

28. At that time, Sethmar notified Plaintiff that they were laying Plaintiff off, but said they would rehire Plaintiff and that he would have a job when he returned to work at Sethmar after seeking medical treatment at Northpoint.

29. From July 3, 2023 to July 30, 2023, Plaintiff obtained medical treatment at Northpoint for his AUD.

30. Sethmar paid Plaintiff for two weeks while he was at Northpoint.

31. In or about late July 2023, towards the end of Plaintiff's stay at Northpoint, he reached out to Mike to confirm that he was going to return to work at Sethmar on July 31, 2023.

32. Mike responded to Plaintiff by saying that he would love for Plaintiff to come back but that Plaintiff needed to speak with Ryan.

33. When Plaintiff tried to contact Ryan several times, Ryan did not respond.

34. On or about August 1, 2023, Plaintiff was finally able to get ahold of Ryan over the phone.

35. During this phone call, Ryan informed Plaintiff that Plaintiff did not have a job at Sethmar any longer.

36. Plaintiff indicated to Mike Tuley that he wished he would have known this earlier and that he could have lined up another job to work in following rehab if he had been provided proper notice by Sethmar.

37. Mike indicated to Plaintiff that he was not expecting this and that he would talk to Ryan the next morning.

38. Plaintiff indicated to Mike that Ryan told him that the decision had been made by everyone.

39. On or about August 2, 2023, Plaintiff indicated to Ryan that he was even willing to take a pay reduction in his base salary to $50,000 if Sethmar would allow him to return to work and continue his employment immediately.

40. Ryan responded to Plaintiff by indicating that he would prefer someone working in the office full time, that he knows it puts Plaintiff in a "shitty spot" trying to get paid as quickly as possible, it was a tough decision on what was best for the business, and he was sorry.

41. Plaintiff has a small family consisting of my wife and two young children.

42. This has been a very difficult time in Plaintiff's life for the reasons stated above.

43. Sethmar's termination of Plaintiff's employment and/or rescinding of its job offer to him has needlessly caused him to incur substantial financial losses and has significantly added to his emotional distress during this difficult time.

44. To Plaintiff's knowledge, non-disabled co-workers in the same or similar positions as Plaintiff at Sethmar were not terminated or did not have their job offer rescinded shortly following their hiring.

45. Defendant's acts of disability discrimination against Plaintiff comprise a series of interrelated events which constitute a continuing violation.

### COUNT I
### Americans with Disabilities Act
### Disability Discrimination/Failure to Accommodate

46. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

47. Plaintiff is a member of a legally protected class due to his disability.

48. Plaintiff has a mental and/or physical impairment(s) that substantially limits one or more of her major life activities, including, but not limited to, his ability to work, sleep, and/or socialize, but does not prevent him from performing the essential functions of his job when provided reasonable accommodation.

49. Plaintiff requested reasonable accommodation(s) from Defendant and/or communicated his need for reasonable accommodation(s) due to his disability.

50. Plaintiff was subjected to the above-referenced adverse actions and/or omissions by Defendant because of his disability.

51. The above-referenced discrimination affected the terms, conditions, and/or privileges of Plaintiff's employment.

52. Defendant knew of the disability discrimination toward Plaintiff and failed to exercise reasonable care to prevent and promptly correct said conduct.

53. Defendant failed to make a good-faith effort to establish and enforce policies to prevent illegal disability discrimination.

54. Defendant failed to properly train and/or otherwise inform supervisors and employees concerning their duties and obligations under the ADA.

55. As a direct and proximate result of Defendant's unlawful conduct described above, Plaintiff has suffered damages, including, but not limited to, pain and suffering, loss of past and future wages and benefits, loss of enjoyment of life, and other non-pecuniary losses.

56. As a direct and proximate result of Defendant's unlawful conduct described above, Plaintiff has suffered garden variety emotional distress damages, including, but not limited to, embarrassment, degradation, humiliation, and various other forms of garden variety emotional distress.

57. Defendant's conduct was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff prays that this honorable Court enter judgment in her favor and against Defendant for such damages as are fair and reasonable, including compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees and costs, all in an amount over $25,000.00 and for injunctive relief, and for such additional relief as may be just and proper under the circumstances.

## JURY TRIAL DEMAND

PLAINTIFF REQUESTS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.

**Murphy, Kinney, & Sumy, LLC**

/s/ *Kyle E. Murphy*
Kyle E. Murphy #70169
406 W. 34th Street, Ste 816
Kansas City, MO 64111
Phone: (816) 281-5470
kyle@murphykinney.com
ATTORNEY FOR PLAINTIFF